### 163.  WRIGHT *v.* THE STATE.

1. The offense of receiving stolen goods is a distinct crime, but the guilt of the principal, whether known or unknown, must be shown before a conviction of the accessory is authorized.
2. The essential facts necessary to be proved to show the commission of the offense by the principal must also be proved on the trial of the accessory.
3. Proof of the value is indispensable to show guilt of larceny, and likewise is absolutely necessary to be shown before the accessory (charged with receiving stolen goods) can lawfully be convicted.
4. The assignments of error are sufficiently specific; but there was no error in admitting the evidence to which objection was made.
5. The court can not take judicial cognizance of the fact that cotton is a thing of value.  An accusation of receiving stolen goods must be as particular and full, as to the descriptive averments of the crime to which the defendant is charged with being an accessory, as if he were charged with being a principal; and all material allegations and even immaterial ones, unless they be wholly impertinent and irrelevant to the cause, must be proved.

Accusation of receiving stolen goods, from city court of Wrightsville—Judge Faircloth.    November 19, 1906.

Submitted January 28,—Decided February 8, 1907.

*B. B. Blount,* for plaintiff in error.

*J. L. Kent, solicitor,* contra.

RUSSELL, J.   Gordon Wright was tried, on an accusation in the city court of Wrightsville, for the offense of receiving stolen goods. He was convicted by the jury, and the case comes to this court on the single assignment of error in overruling his motion for new trial.   In addition to the general grounds, the motion was amended, and complaint was made of the admission of certain evidence which it was insisted was immaterial, irrelevant, and inadmissible.   The accusation, so far as is material to this in-vestigation, was in these words:   "For that the said Gordon Wright, in the county and State aforesaid, on the first day of October, 1905, did then and there unlawfully, and with force and arms, did buy and receive certain goods and chattels, to wit, 800 pounds of seed-cotton that had been stolen from H. V. and G. A. Tarbutton, knowing the same to have been so stolen, said seed-cotton being the property jointly of H. V. and G. A. Tarbutton, and of the value of $25, said seed-cotton having been stolen from the said H. V. and G. A. Tarbutton by some one unknown to prose-cutor; and the said Gordon Wright bought and received the same, knowing the same to have been so stolen."   The evidence for the State showed that between 800 and 1200 pounds of seed-cotton was stolen from H. V. and G. A. Tarbutton some time during the night of October 1, 1905.   The cotton was piled up in their field, and as soon as it was missed it was discovered that some one or more persons had carried it from the pile to a wagon in the pub-lic road near by.   The tracks of the persons were plain in the field and the recent rain made it possible to track a wagon from this newly made path in the field to the home of the defendant. Arriving at his home, the searching party could track the wagon no further, nor did they find any wagon there, but they asked the defendant if he had any cotton on hand.   He replied in the affirmative, and that it was in one of the rooms of his house.   He at first objected to showing the cotton, but afterwards consented, though he seemed to be much excited.   He said that he would have to get the key from his wife, and when he went and got it and unlocked the room door he appeared to be scared.   There was cotton in the room in sacks which were damp.   There had been a shower of rain in the early night.   The cotton was yellow, like that raised on Tarbutton's place.   The defendant was not culti-vating red land; he cultivated sandy land in 1905.   H. V. and

G. A. Tarbutton cultivated red land, which is a rarity in that section. All of the cotton in the room was sacked, and had been raised on red land. Locks of cotton were seen in the road where the wagon stopped, which corresponded in color with that in the sacks. This was in Johnson county, Georgia. The defendant was told that some one had stolen Tarbutton's cotton the night before, and H. V. Tarbutton said he told him that he thought the cotton in the room was theirs. Defendant denied this, and said this cotton came out of his own field. Search was made for cotton at various places in the neighborhood, but no other cotton was found. The State further proved that defendant's crop of cotton in 1905 could not have produced more than two or three bales. The above evidence was introduced without objection. In addition the State proved by three different witnesses that the defendant had ginned in the season of 1905 either seventeen or nineteen bales of cotton; which he claimed as his own. The evidence with regard to the ginning of the cotton and the quantity ginned was objected to by the defendant, and constituted the grounds of his amended motion for a new trial. The defendant proved that his cotton crop would produce at least eight bales, and that the cotton seen by Tarbutton in the room at the defendant's house was there on Friday before the theft; and the defendant made a statement denying his guilt and explaining that the cotton in the room was his own. There was no proof of the value of the cotton.

1. It is well settled that while the offense of receiving stolen goods is a distinct offense, nevertheless the guilt of the principal, whether known or unknown, must be shown before the conviction of the accessory will be authorized. The statute is in these words (Penal Code, §171): "If any person shall buy or receive any goods, chattels, money, or other effects, that shall have been stolen or feloniously taken from another, knowing the same to be stolen or feloniously taken, such person shall be an accessory after the fact, and shall receive the same punishment as would be inflicted on the person convicted of having stolen or feloniously taken the property." Under the old common-law rule, the accessory could never be tried without his consent, before the conviction of the principal, unless they were tried jointly; and it was competent for the accessory to dispute the guilt of the principal if the principal had been previously convicted, and establish his own innocence

by proving that the principal was not guilty. And so indispensable was the guilt of the principal to the offense of the accessory that the latter could go behind a judgment of conviction against the former to show that he was not guilty. In our State the common law has been modified by §172 of the Penal Code, so as to permit the prosecution and punishment of the accessory, where the principal thief is unknown, or can not be taken so as to be prosecuted and convicted.

2. It follows, therefore, where the principal is unknown and the receiver of stolen goods is alleged to be an accessory to a larceny, that every fact essential to be shown in order to convict the principal of the larceny must be proved, as well as that the party on trial received the stolen goods with guilty knowledge that they were stolen.

3. It can not be doubted that the question of value must be proved on every trial for larceny, if the conviction is sustained, and likewise it is absolutely necessary to be shown before the accessory can be lawfully convicted. *Hines* v. *State,* 26 *Ga.* 614; *Blount* v. *State,* 76 *Ga.* 18. In this case the accusation alleges the value to be $25, and yet the proof does not establish that the cotton was of any value. It was indispensable in this case to prove the value of the stolen property, both because it is essential in the proof of the guilt of the unknown thief, and also because a value was alleged in the accusation. "It is a familiar rule . . that a party is held to prove all material allegations, and even immaterial ones, unless they be wholly impertinent and irrelevant to the cause." *Simmons* v. *State,* 4 *Ga.* 473. And this failure to prove the value demands a new trial.

4. In view of what we conceive to be the error of our learned brother of the trial bench in refusing to grant a new trial upon the general ground that the verdict was without evidence to support it (due to the failure of the State to prove the value), we might remand the case without further discussion; but in view of the fact that counsel for the State insist that the assignments of error contained in the amended motion should not be considered, for the reason that no error is specified, we will briefly consider the amendment and the evidence on the admission of which error is assigned. We think the assignment that the evidence was objected to because it was illegal, irrelevant, and immaterial, is a

sufficient objection, and is fully presented to the court by the writ of error. On the other hand we think there was no error on the part of the trial judge in admitting the testimony of the witnesses who testified to the amount of cotton ginned for the defendant during the same season as that during which the stolen cotton was produced. It is not to be presumed that the cotton ginned for him was stolen. It did not put his character in issue. But taken in connection with the testimony as to the amount of cotton raised by him, it might be considered by the jury in determining whether the cotton mentioned in the accusation was part of his crop. It was one of those circumstances, too, by which he could easily explain the possession of the cotton, if it had been bought or procured by him otherwise than by cultivation.

5. It is insisted by counsel for the State that the court can take judicial cognizance that the cotton alleged to be stolen had a value. In view of what has been stated above as to the materiality of the allegation of value and the absolute necessity of proof of that allegation, we need only remark that the court could no more take judicial cognizance of value than of venue; and certainly it would seem that the presumption would be much stronger in favor of judicial knowledge of venue than of value.

*Judgment reversed.*