STATE OF NEW JERSEY, PLAINTIFF, v. ROYAL EZRA DUNBAR AND ROBERT GENE THOMAS, DEFENDANTS.

Superior Court of New Jersey
Law Division — (Criminal)

Decided June 4, 1973.

*Mr. Campbell Jackson,* Assitant Prosecutor, for the State (*Mr. Richard J. Williams,* Atlantic County Prosecutor, attorney).

*Mr. Jacob Gorny,* Assistant Deputy Public Defender, for defendant Robert Gene Thomas (*Mr. Robert LeGore,* Deputy Public Defender, attorney).

GREENBERG, J. C. C., Temporarily Assigned. Under one of the counts in the indictment in this case defendant Robert Gene Thomas was convicted by a jury of receiving stolen property. *N. J. S. A.* 2A:139–1. The offense occurred on January 4, 1973. He was charged with receiving and having in his possession a wallet, two car keys and some money. There was introduced no evidence of the value of the wallet and car keys, and, in any event, these items would undoubtedly have been of inconsequential value. Defendant Thomas was arrested in actual possession of $72 in stolen money and his codefendant was arrested in actual possession of $73 in stolen money. Therefore, even regarding Thomas as having been in legal possession of all of the money, the value of all the property that he received was $145.

Defendant moves for a judgment of acquittal on the ground that he was not convicted of any offense within the purview of *N. J. S. A.* 2A:139–1, since that section, as amended effective September 27, 1972, applies only where the value of the property in question is in excess of $200. The same amending act constitutes the receiving of property having a value of $200 or less a violation of the Disorderly Persons Act. *N. J. S. A.* 2A:170–41.1.

There is no doubt that defendant is not guilty of a violation of *N. J. S. A.* 2A:139–1. The question is whether the jury verdict is to be regarded as a conviction under the Disorderly Persons Act and, if so, whether this court is to impose sentence thereunder.

In the case of *State v. McGrath,* 17 *N. J.* 41 (1954), the Supreme Court held that the count of an indictment charging simple assault and battery should have been dismissed. Defendant had also been indicted for atrocious assault and battery. The court held that in view of the Disorderly Persons Act the offense of simple assault and battery was within

the sole jurisdiction of the municipal court. In the course of its opinion the court emphasized the problems which it felt would arise if in the ordinary case a jury could convict a defendant of any lesser charge than that specified in the indictment, indicating that instructions to the jury would be required as to all offenses for which a defendant could conceivably be convicted; that if such instructions were to be given, then counsel would have the right in their opening statements to refer to all lesser offenses and to introduce evidence relevant to the same, resulting, in the view of the court, in "the utter confusion of the jury." *Id.,* at 46. *McGrath* was followed by the court in *State v. Currie,* 41 *N. J.* 531 (1964), but in *State v. Briley,* 53 *N. J.* 498 (1969), the court stated in a footnote (at 504)

We need not decide whether the Superior Court, to which all indictments are returnable, has jurisdiction to hear the disorderly-person offense of assault and battery as a lesser included offense when a defendant is on trial for atrocious assault and battery, nor, assuming such jurisdiction does exist, need we decide at this time what, if any, procedural steps might be necessary to facilitate complete disposition of both offenses. * * *

Thus, the latest intimation of the Supreme Court is that the question is still open.

The problems noted by the court in *State v. McGrath, supra,* as complicating factors, do not exist in the present case. There are no differences between the indictable offense of receiving stolen property and the disorderly persons offense, other than the value of the property. Indeed, the Legislature patterned the disorderly persons offense so closely after the indictable offense that even the reference to a jury was included in the disorderly persons offense. See *N. J. S. A.* 2A:170–41.1. This reference may have been in error since, of course, the right to jury trial would not exist except with respect to an indictable offense. In any event, there will ordinarily have to be made some determination of value in the trial of an indictment for receiving stolen

property. The jury will have to determine that the value is in excess of $200 in order to convict a defendant of the indictable offense. Obviously, if the jury determines that the value is not in excess of $200, then a determination has been made of all that is necessary to convict the defendant of the disorderly persons offense. No problem exists with respect to instructing the jury as to other offenses.

 The alternatives to a determination that defendant in this case has been convicted of the disorderly persons offense of receiving stolen property would be to acquit him, with no further action to be taken, or to acquit him with the matter to be referred to the municipal court for prosecution. Neither alternative would seem to serve the ends of justice. It is difficult to conceive of why defendant should avoid any conviction. He has, after all, been found guilty by a jury of acts which constitute a disorderly persons offense. While such a charge would not ordinarily be tried by a jury, this would not seem to give defendant ground for complaint. A defendant tried for an indictable offense does not have his constitutional rights infringed when he is tried by a jury, even though he has unilaterally attempted to waive a jury trial, *State v. Belton,* 60 *N. J.* 103 (1972), and there certainly would seem to be no reason why a nonindictable offense could not be tried by jury. Defendant argues that he should be acquitted because the State made an "election" to try him on the indictable offense and should not now be permitted to have a conviction on the lesser charge. This argument, however, merely states a conclusion with no reasons for it. Defendant would suffer no prejudice if determined guilty of the disorderly persons offense.

The second alternative of referring the matter to the municipal court for further proceedings (as suggested in *State v. McGrath, supra*) would also seem unsatisfactory on the facts of this case. Defendant has already had a trial and been found guilty as to all elements of the disorderly per-

sons offense. No reason is perceived as to why the same issues should be relitigated in another court.

An argument can be made that the ends of calendar control require that it be held that defendant cannot be determined guilty of the disorderly persons offense. That is, if the State is forced at its peril to make an election as between the indictable and nonindictable offense, then in all close cases as to value the State will tend to proceed against a defendant in the municipal court rather than take the risk that he will avoid any conviction at all because of a determination on the trial of the indictment that value was $200 or less. This will result in fewer indictments being returned and a reduction in the indictable case load. From that viewpoint the argument may have some merit. However, it must be kept in mind that the question being dealt with is one of value. Value in many cases is a matter of opinion as to which even experts can differ. If the State has sufficient evidence of value to procure an indictment, the State should be allowed to rely on this evidence. Moreover, the distinction between the offenses based on value is a legislative determination, and it would seem that the courts should not take a position which would tend to thwart the will of the Legislature.

One other factor may be worthy of mention. By reason of an assignment order of the Supreme Court, all County Court judges are temporarily assigned to each municipal court in the county for which they have been appointed. While *N. J. S. A.* 2A:3–4 provides that the "county court of each county shall have cognizance of all crimes and offenses of an indictable nature," as to jurisdiction in municipal courts *N. J. S. A.* 2A:8–21 provides:

Each municipal court, and the magistrate or magistrates thereof, shall have jurisdiction of the following offenses occurring within the territorial jurisdiction of the court:

\* \* \*

d. Violations of the "disorderly persons law", \* \* \*.

Of course, under *N. J. S. A.* 2A:8–5.1, effective as of September 25, 1967, magistrates are known and referred to as judges of the municipal court. Thus, it is to be noted that in the municipal courts jurisdiction lies with the court and also with the judges thereof. In view of the language of the statute it would not be correct to say that jurisdiction of disorderly persons offenses is solely with the municipal court, for then the words, "and the magistrate or magistrates thereof," would be superfluous — and normally statutes are construed so as to give all words some meaning. *State v. Sperry & Hutchinson Co.,* 23 *N. J.* 38 (1956). If it is concluded that the assignment order of the Supreme Court vests all Superior Court and County Court judges with the powers of municipal court judges, then Superior Court and County Court judges would seem to have jurisdiction over disorderly persons offenses, and the matter of which court a disorderly persons offense is tried in becomes unimportant. The foregoing seems a reasonable conclusion. While all of the trial courts in New Jersey have not been merged into one court, the judges of all state and county courts may and do serve in any trial court.

In view of the foregoing it is my conclusion that defendant stands convicted on a violation of *N. J. S. A.* 2A:170–41.1, being a section of the Disorderly Persons Act, and may be sentenced in this court according to law.